UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                       :

IN RE: METHYL TERTIARY BUTYL     :
ETHER ("MTBE") PRODUCTS        :     **OPINION AND ORDER**
LIABILITY LITIGATION              :
------------------------------------------------- :     **Master File No. 1:00-1898**
                                         :     **MDL 1358 (SAS)**
**This document relates to:**         :     **M21-88**
                                         :
*Commonwealth of Puerto Rico et. al., v.*   :
*Shell Oil Co. et al.*, 07 Civ. 10470 and 14   :
Civ. 1014                                :
                                         X
------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 5, 2014

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

       This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water. In this case,

the Commonwealth of Puerto Rico ("the Commonwealth") alleges that defendants'

use and handling of MTBE has contaminated, or threatened to contaminate

groundwater within its jurisdiction. Familiarity with the underlying facts is

presumed for the purposes of this Order.

       Tauber Oil Company ("Tauber") now moves to dismiss the

Commonwealth's complaints[1] for lack of personal jurisdiction.[2]  For the following

reasons, the motion is granted.

## II.  BACKGROUND[3]

Tauber is a Texas-based marketer of energy products.[4]  From 1985 to

1997, Tauber sold MTBE to Phillips Petroleum Company ("Phillips Petroleum"),

Phillips 66 Company, and Phillips Chemical Company ("Phillips entities") — all

located in Bartlesville, Oklahoma — in a series of "spot sales."[5]  Tauber had no

---

[1]     Tauber moves to dismiss both the Third Amended Complaint
("TAC") in the 07 Civ. 10470 case ("*Puerto Rico I*") and the Complaint
("Compl.") in the 14 Civ. 1014 case ("*Puerto Rico II*").

[2]     Tauber styles its motion as a motion to dismiss but submitted a Local
Rule 56.1 Statement.  Because motions to dismiss for lack of personal jurisdiction
are governed by Rule 12(b)(2), the Court will deem the motion brought pursuant to
Rule 12(b)(2).  However, Tauber's Local 56.1 Statement ("Def 56.1"), the
Commonwealth's Opposition to Tauber's 56.1 Statement and Additional Facts
("Pl. 56.1"), and Tauber's Amended Rule 56.1 Statement and Opposition to
Plaintiffs' Rule 56.1 Statement ("Def. Reply 56.1") will nonetheless be considered
because "a district court may [consider materials outside the pleadings] without
converting a motion to dismiss for lack of personal jurisdiction into a motion for
summary judgment." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81,
86 (2d Cir. 2013).

[3]     Where the parties have conducted jurisdictional discovery, a court
may consider affidavits and other materials outside the pleadings. *See id.* at 85
("[After discovery], the prima facie showing must be factually supported.").

[4]     *See* Declaration of Kevin Wilson ("Wilson Decl."), Vice President of
Tauber, ¶ 4.

[5]     *See id.* ¶¶ 30, 33.  A spot sale is a stand-alone agreement for a
purchase of a specified quantity "on the spot," reflecting the current market price

distribution or agency agreements with any Phillips entity.[6]  Because all MTBE

sales were governed by Free on Board contracts, title transferred from Tauber to

the Phillips entities in Texas.[7]  Tauber had no title on the vessel that transported the

MTBE and no involvement in determining the MTBE's ultimate destination.[8]

   Instead, Phillips Petroleum independently arranged for the shipment

of neat MTBE to Puerto Rico for gasoline blending at Phillips Chemical Puerto

Rico Core facility ("Core facility").[9]  The Core facility sold gasoline to the

wholesale market both in Puerto Rico and elsewhere.[10]  However, the gasoline was

not always blended with MTBE.[11]  The Core facility sometimes used other octane

---

of the commodity. *See id.* ¶ 30 n.1.

 [6] *See id.* ¶ 37.

 [7] *See id.* ¶ 44; 12/16/13 Deposition of Kevin Wilson ("Wilson Dep."), Ex. A to the Declaration of Michael A. Walsh, counsel for Tauber, ("Walsh Decl."), at 73:13-75:6.  The only exception is a 1996 transaction where Tauber acquired MTBE through an intermediary in Venezuela and sold the MTBE to Phillips 66 in Oklahoma.  In that transaction, title transferred in Venezuela.  *See* Reply Declaration of Kevin Wilson ("Wilson Reply Decl.") ¶ 5.

 [8] *See* Wilson Dep. at 73:13-75:6, 133:13-23.

 [9] *See* Core Facility's Second Amended Objections and Responses to Plaintiffs' First Set of Interrogatories and Request for Production of Documents, Ex. B to the Walsh Decl., at 6.

 [10] *See* Declaration of Hector A. Marin ("Marin Decl."), Electrical Design Engineer at the Core facility, Ex. G to the Walsh Decl., ¶ 8.

 [11] *See id.* ¶ 3.

3

enhancers.[12]

Tauber never manufactured, marketed, traded, stored, sold, solicited, advertised, or otherwise handled finished gasoline, gasoline containing MTBE, or neat MTBE in Puerto Rico.[13]  Tauber was not involved in any decision by any Phillips entity to use or ship MTBE to Puerto Rico.[14]  Nor was Tauber's price for MTBE contingent on the ultimate destination of the MTBE.[15]

## III.  LEGAL STANDARD

### A.    Rule 12(b)(2) Motion to Dismiss

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant."[16]  "[W]here . . . discovery has not begun, a plaintiff need only allege facts constituting a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion."[17]  However, "[a]fter discovery, the plaintiff's prima facie

---

[12]    *See id.*

[13]    *See* Wilson Decl. ¶¶ 6, 7.

[14]    *See id.* ¶¶ 36, 39.

[15]    *See id.* ¶ 42.

[16]    *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal citations omitted).

[17]    *M & M Packaging, Inc. v. Kole*, 183 Fed. App'x 112, 114 (2d Cir. 2006).

showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."[18]  Conclusory allegations are insufficient—"[a]t that point, the prima facie showing must be factually supported."[19]  When a "defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction — and plaintiffs do not counter that evidence — the allegation may be deemed refuted."[20]

To determine whether it has personal jurisdiction over a party, a court conducts a two-part analysis.  "First, it must consider whether the state's long-arm statute confers jurisdiction, and then it must determine whether such exercise comports with the Due Process Clause of the United States Constitution."[21]

**B.    Specific Jurisdiction Under Puerto Rico's Long Arm Statute**

"Puerto Rico's long-arm statute allows Puerto Rico courts to exercise jurisdiction over a non-resident defendant if the action arises because that person:

---

[18]    *Dorchester*, 722 F.3d at 85.

[19]    *Id.*

[20]    *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 567 (S.D.N.Y. 2012) (internal citations omitted).

[21]    *Glenwood Sys., LLC v. Med–Pro Ideal Solutions, Inc.*, 438 Fed. App'x. 27, 28 (2d Cir. 2011).

(1) '[t]ransacted business in Puerto Rico personally or through an agent'; or (2) 'participated in tortious acts within Puerto Rico personally or through his agent.'"[22] "Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause."[23] Thus, the present inquiry is guided by "whether the exercise of personal jurisdiction [] would abide by constitutional guidelines" of Due Process.[24]

### 3.    Due Process

The Supreme Court set forth the requirements of Due Process in *International Shoe v. Washington*: that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[25] This analysis requires both a "minimum-contacts" test and a "reasonableness" inquiry.

*First*, to satisfy minimum contacts for due process, the plaintiff must

---

[22]     *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 24 (1st Cir. 2007) (quoting L.P.R.A., Tit. 32, App. III, Rule 4.7(a)(1)).

[23]     *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011) (citations omitted). *Accord Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (citations omitted) (stating that Rule 4.7 "extends personal jurisdiction as far as the Federal Constitution permits").

[24]     *Gonzalez-Diaz v. Up Stage Inc.*, No. 11 Civ. 1689, 2012 WL 2579307, at *1 (D.P.R. July 3, 2012).

[25]     326 U.S. 310, 316 (1945) (quotation marks and citations omitted).

6

demonstrate that "the defendant purposely availed itself of the privilege of doing business in the forum and could foresee being haled into court there" and that "the claim arises out of, or relates to, the defendant's contacts with the forum."[26] As the Supreme Court recently explained, "the relationship [between the defendant and the forum state] must arise out of contacts that the 'defendant *himself*' creates with the forum State."[27] Though "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,] a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[28] "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State."[29] As such, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to

---

[26]    *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (quotation marks and citations omitted).

[27]    *Walden v. Fiore*, — U.S. — , 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[28]    *Id.* at 1123 (citations omitted).

[29]    *Id.* (quotation omitted).

justify an assertion of jurisdiction."[30]

*Second*, if the defendant's contacts with the forum state satisfy this test, the defendant may defeat jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[31]

## IV.   DISCUSSION

The Commonwealth mentions Tauber by name only once in each of its complaints, stating that "Tauber is a Delaware corporation headquartered at 55 Waugh Drive, Suite 700 in Houston, Texas 77007."[32]  No allegation in the pleadings links Tauber to the refining, supplying, marketing, or addition of MTBE to gasoline in Puerto Rico.

Nevertheless, the Commonwealth now contends that Tauber "knew that its MTBE was destined for Puerto Rico" where it would be "blended into gasoline [at the Core facility] and distributed throughout the island."[33]  To support

---

[30]     *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

[31]     *Burger King*, 471 U.S. at 477. *Accord Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010).

[32]     Compl. ¶ 81; TAC ¶ 64.  In fact, Tauber is a Texas corporation. *See* Wilson Decl. ¶ 4.

[33]     Pl. Mem. at 7.

its contention, the Commonwealth cites assorted documents, including: (1) faxes and emails from Phillips' entities to Tauber that identify Puerto Rico as the destination for the vessels;[34] (2) Tauber invoices and bills of lading from the Core facility;[35] (3) various documents from non-party Tauber Petrochemical Company ("TPC"), Tauber's wholly owned subsidiary.[36]

None show that Tauber "purposefully avail[ed] itself" of Puerto Rico's laws.[37] *First*, Tauber never solicited the destination information, and it was immaterial to Tauber's transactions with the Phillips entities.[38] Although the Phillips entities occasionally volunteered the destination information, they did so only *after* the parties had agreed on the terms of each transaction.[39] Even if

---

[34]    *See* Nomination Documents, Ex. 2 to the Declaration of Justin A. Arenas, counsel for the Commonwealth ("Arenas Decl.").

[35]    *See* Invoices, Ex. 10 to the Arenas Decl.; Bills of Lading, Ex. 9 to the Arenas Decl.

[36]    *See, e.g.*, Faxes and Letters, Ex. 3 to the Arenas Decl.

[37]    *Goodyear Dunlop Tires Ops., S.A. v. Brown*, —— U.S. ——, 131 S. Ct. 2846, 2854 (2011) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[38]    *See* Wilson Dep., Ex. A to the Walsh Decl., at 133:20-135:21.

[39]    *See id.* Only one agreement between Tauber and the Phillips entities referred to Puerto Rico. *See* Wilson Reply Decl. ¶ 5. There, Tauber purchased MTBE from Ecofuels and sold it to Phillips 66 in Venezuela, where the MTBE was retained for testing. *See id.* Title passed simultaneously from Ecofuels to Tauber to Phillips 66, and the shipment to Puerto Rico remained the responsibility of Ecofuels. *See id.* Tauber did not import the MTBE to Puerto Rico. *See id.* This

Tauber knew that the Phillips entities were shipping the MTBE to Puerto Rico,

"'foreseeability' alone has never been a sufficient benchmark for personal

jurisdiction under the Due Process Clause."[40]  Instead, "[d]ue process requires that

a defendant be haled into court in a forum State based on *his own* affiliation with

the State, not based on the random, fortuitous, or attenuated contacts he makes by

interacting with other persons affiliated with the State."[41]  Here, Tauber never

manufactured, marketed, delivered, or sold its MTBE in Puerto Rico.[42]  Nor did it

solicit or advertise its MTBE in Puerto Rico.[43]  Instead, Tauber merely sold MTBE

to the Oklahoma-based Phillips entities in a series of isolated "spot sales."[44]  The

independent decision of the Phillips entities to ship the MTBE to Puerto Rico does

not establish jurisdiction over Tauber.

        *Second*, the Commonwealth's evidence fails to show that Tauber

---

transaction does not prove that Tauber had "minimum contacts" with Puerto Rico.

    [40]    *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295
(1980).

    [41]    *Walden*, 134 S. Ct. at 1123 (emphasis added). *Accord World–Wide
Volkswagen*, 444 U.S. at 298 ("[T]he mere 'unilateral activity of those who claim
some relationship with a nonresident defendant cannot satisfy the requirement of
contact with the forum State.'").

    [42]    *See* Wilson Decl. ¶ 6.

    [43]    *See id.* ¶ 7.

    [44]    *See id.* ¶ 30.

"knew its MTBE was blended into gasoline [at the Core facility] and then distributed" throughout Puerto Rico.[45]  The Commonwealth cites to Tauber invoices as evidence that Tauber received payments from the Core facility.[46]  In fact, these invoices indicate that the Phillips entities paid Tauber, and several months later, the Core facility paid the Phillips entities.  There is no evidence that Tauber received payments from the Core facility or from any other Puerto Rico-based entity.  In addition, the Commonwealth cites to bills of lading to show that the Core facility sometimes sold gasoline within Puerto Rico, and that this gasoline may have contained Tauber's MTBE.[47]  Even accepting this assumption, the Core facility's records — which Tauber did not see until discovery — do not track "whether a sale of gasoline contained MTBE or not, nor do they reference or identify the batch from which a sale was derived."[48]  As such, when Tauber transacted with the Phillips entities, it had no way of knowing whether its MTBE would ultimately be distributed within Puerto Rico.

       *Third*, the Commonwealth attempts to establish jurisdiction over

---

[45]     Pl. Mem. at 6.

[46]     *See* Pl. 56.1 ¶ 73 (citing Invoices, Ex. 10 to Arenas Decl.).

[47]     *See* Pl. Mem. at 6.

[48]     Marin Decl. ¶ 8.

11

Tauber based on the actions of Tauber's subsidiary, TPC.[49]  The Commonwealth

argues that TPC sold neat MTBE to Puerto Rico, knowing that it would be blended

with gasoline and distributed throughout Puerto Rico.[50]  However, "'[t]he mere fact

that a subsidiary company does business within a state does not confer jurisdiction

over its nonresident parent, even if the parent is sole owner of the subsidiary.'"[51]

Courts in the First Circuit require a "plus factor," such as a finding of an agency

relationship between the two corporations, the parent corporation exercising

"greater than . . . normal[]" control over the subsidiary, or the subsidiary acting as

"merely an empty shell" for the parent's operations.[52]  The Commonwealth asserts

that TPC and Tauber share office space and three of the same employees.[53]  But an

overlap in office space or employees is within the bounds of normal corporate

structure.[54]  Because the Commonwealth has not demonstrated the existence of a

[49]     *See* Pl. Mem. at 1.

[50]     *See id.*

[51]     *Negron-Torres*, 478 F.3d at 27 (quoting *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)).

[52]     *Donatelli v. National Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990) (quotation marks and citations omitted).

[53]     *See* Pl. 56.1 ¶¶ 68, 70.

[54]     *See Escude Cruz*, 619 F.2d at 905 (noting that allegations of interlocking directorates will not suffice to show that the activities of the subsidiary should be attributed to the parent); *In re Lupron Mktg. & Sales*

12

"plus factor," such as agency, extraordinary control, or shell, the Court cannot

attribute TPC's actions to Tauber for jurisdictional purposes.[55]

## V.    CONCLUSION

For the foregoing reasons, Tauber's motion is GRANTED.  The Clerk

of the Court is directed to close this motion (Doc. No. 364 in 07 Civ. 10470; Doc.

No. 34 in 14 Civ. 1014).

---

*Practices Litig.*, 245 F. Supp. 2d 280, 292 (D. Mass. 2003) (holding that customary incidents of a parent-subsidiary relationship — ownership, common personnel, profits, and managerial oversight — are not suspect and are insufficient for vicarious jurisdiction); *Ferreira v. Unirubio Music Publ'g*, No. 02 Civ. 805, 2002 WL 1303112, at *2 (S.D.N.Y. June 13, 2002) (holding that evidence of shared office space, address, telephone, and fax number will not alone cause the Court to disregard corporate formalities).

[55]    *See Donatelli*, 893 F.2d at 465–66 (citations omitted).  Although Tauber raised lack of personal jurisdiction in its first responsive pleadings in both *Puerto Rico I* and *Puerto Rico II*, the Commonwealth argues that Tauber failed to preserve the defense because it engaged in merits-based discovery and only advised the Commonwealth about its Rule 12(b)(2) motion on February 21, 2014. *See* Pl. Mem. at 10.  However, Tauber only noticed a single deposition, which it never took, and served a set of interrogatories.  Both were focused on jurisdictional facts.  It also presented Wilson for deposition on questions related to Tauber's lack of knowledge that MTBE was being shipped to Puerto Rico.  Conducting jurisdictional discovery does not constitute waiver.  In fact, the Second Circuit has expressly stated that a motion to dismiss for lack of personal jurisdiction in an MDL case is timely where, as here, it is raised before a transferee court at any time during the pre-trial proceedings.  *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62 (2d Cir. 1999) ("During the three years that this and similar cases were pending before the MDL, [defendant] could have raised its jurisdictional challenge before the transferee court.").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 5, 2014

-14-

## - Appearances -

**Liaison Counsel for Plaintiffs:**     **Liaison Counsel for Defendants:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Commonwealth**:     **Counsel for Defendant Tauber Oil:**

Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
(916) 488-6688

Michael A. Walsh, Esq.
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, TX 75202
(212) 651-4459

Justin J. Arenas, Esq.
John K. Dema, Esq.
Law Offices of John Dema, P.C.
11300 Rockville Pike, Suite 112
Rockville, Maryland 20852
(301) 881-5900