# KING & SPALDING

101 Second Street
Suite 2300
San Francisco, CA  94105
Tel:  (415) 318-1200
Fax:  (415) 318-1300
www.kslaw.com

Charles C. Correll, Jr.
Direct Dial:  415-318-1209
Direct Fax:  415-318-1300
ccorrell@kslaw.com

July 2, 2014

*VIA EMAIL AND PERSONAL DELIVERY*

The Honorable Shira A. Scheindlin
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

Re:     **In re MTBE Products Liability Litigation, MDL No. 1358:**

**This Document relates to: *Commonwealth of Puerto Rico , et al. v. Shell Oil Co., et al.*
Chevron Defendants' Response to Plaintiffs' Motion for an Order Compelling
Production of Reliance Materials for Chevron Defendants' Experts Anthony Daus
and John Connor and To Strike Mr. Connor as an Expert Witness**

Dear Judge Scheindlin:

The Chevron Defendants[1] respectfully submit this response to Plaintiffs' letter of June 24, 2014 requesting that the Court: (a) order the production of data underlying certain articles coauthored by the Chevron Defendants' expert John Connor; (b) order the production of documents requested in the deposition notice to Mr. Connor; and (c) strike all of Mr. Connor's opinions as a discovery sanction and because the opinions are allegedly duplicative of another expert, Anthony Daus.[2]  The Court should deny the requested relief in its entirety under CMO 112 because these experts did not rely on the underlying data at issue, the document requests are in clear violation of CMO 112, and Mr. Connor's opinions are not duplicative of the opinions of Mr. Daus.

_____

[1]     Chevron Corporation, Chevron U.S.A. Inc., Chevron International Oil Company, Inc., Chevron Caribbean Inc., Chevron Puerto Rico, LLC, and Chevron Estrella Puerto Rico Inc.

[2]     Because of the gravity of the relief requested by Plaintiffs, the Chevron Defendants respectfully request leave to exceed the Court's customary page limit for this response.

Honorable Shira A. Scheindlin
July 2, 2014
Page 2

Plaintiffs' letter—replete with inaccuracies and misleading statements—is gamesmanship at its worst. Indeed, rather than obfuscating expert discovery—as Plaintiffs allege—the Chevron Defendants have complied fully with their CMO 112 obligations. First, they produced all of Mr. Connor's and Mr. Daus's reliance materials on April 14, 2014 in accordance with CMO 112.[3] Neither expert relied on the additional data Plaintiffs seek in their motion; therefore CMO 112 does not require its production. Second, the Chevron Defendants timely produced to Plaintiffs every document Plaintiffs are entitled to under Paragraph VII of CMO 112. Third, and as demonstrated below, Mr. Connor has distinct areas of testimony not covered by Mr. Daus, as Plaintiffs know. Plaintiffs' motion should be denied.

On June 26, 2014, because Your Honor was not available to hear Plaintiffs' motion, Ms. Beirut directed the parties to Special Master Warner. Special Master Warner provided helpful guidance that culminated in Plaintiffs' agreement to accept the Chevron Defendants' offer to produce the McHugh data in exchange for an agreement that Mr. Connor's deposition would be completed this week. Plaintiffs did not, however, agree to withdraw their remaining improper demands. Thus, what remains in dispute are Plaintiffs' requests for: (1) the underlying data for the McDade paper, which has already been produced to the extent the data was relied upon in the Connor/Daus report; (2) the underlying data for the Kamath paper, which was not part of the Connor/Daus reliance material and is also confidential; and (3) documents in the deposition notice to Mr. Connor that constitute a broad range fishing expedition into emails, memoranda, and other documents that are prohibited by Paragraph VII of CMO 112.

**CMO 112 Governs This Dispute.**

Prior to the commencement of expert discovery, the parties negotiated and agreed that CMO 112 would govern and control what materials experts must produce and when. In particular, the parties agreed that each expert would produce his or her "Reliance Materials," which was defined as "all files, documents, texts and underlying data or manipulations of such data reviewed or relied upon by that expert in forming the basis for his or her opinion." CMO 112 (emphasis added).[4] The Chevron Defendants produced all of this information for both Mr. Daus and Mr. Connor on April 14, 2014 in compliance with CMO 112.

Importantly, CMO 112 does not require the production of data used to support conclusions in articles not relied upon, but coauthored, by the expert. And for good reason—most experts in this case have authored countless articles, so to produce all of the underlying data for each article would be unduly burdensome and oppressive. Instead, discovery is limited to data used in forming opinions *for this case.*

---

[3]   *See* J. Maher letter to M. Axline dated April 14, 2014 (Ex. A).

[4]   *See* CMO 112 (Ex. B).

Honorable Shira A. Scheindlin
July 2, 2014
Page 3

Plaintiffs correctly note that CMO 112 permits document requests to accompany expert deposition notices, but Paragraph VII of CMO 112 specifically provides that the requests "shall be limited to" seven discrete categories of documents:

A.  Materials required to be produced by Rule 26(a)(2)(B), to the extent not already produced;

B.  Reliance Materials, as defined herein and to the extent not already produced;

C.  Documents concerning retention and compensation in the above-captioned action;

D.  Articles, studies or reports authored by the expert that relate to the subject matter of the expert's opinion(s) in the above-captioned action, MTBE, TBA and/or ethanol, to the extent published within the last ten years;

E.  Expert reports and transcripts of deposition and/or trial testimony provided by the expert in any civil lawsuit or administrative matter that relate to the subject matter of the expert's opinion(s) in the above-captioned action, MTBE, TBA and/or ethanol, to the extent provided within the last four years;

F.  Hearing transcripts, orders, decisions or other rulings limiting or barring all or part of the expert's prior testimony or opinions that relate to the subject matter of the expert's opinion(s) in the above-captioned action, MTBE, TBA and/or ethanol, to the extent provided within the last four years; and

G.  To the extent permitted by Rule 26(b)(4)(C), communications between the expert and counsel for any party in the above-captioned action that: (i) relate to compensation in the above-captioned action; (ii) identify facts or data that counsel provided and that the expert considered in forming his/her opinions; and (iii) identify assumptions that counsel provided and that the expert relied on in forming his/her opinions.

The parties agreed to this limited list of additional documents in order to avoid precisely what Plaintiffs ask the Court to allow here—expansive document requests that are far afield of the expert's work in this case.  Plaintiffs' deposition notices to Mr. Connor and Mr. Daus in this case, and Plaintiffs' motion to compel here, are in complete contradiction to the expert protocol to which Plaintiffs agreed before the start of expert discovery.[5]

---

[5]  Plaintiffs' reference to the Court's Suggested Rules of Discovery Practice No. 7 is misplaced and, in any case, irrelevant.  First, according to CMO 112, the date for the production of reliance materials is five days after the expert report is filed.  As stated, the Chevron Defendants produced the Connor/Daus reliance materials timely on April 14, 2014.  Second, the deadline under CMO 112 for the production of any additional materials reviewed by the expert after the initial production is no later than 48 hours before the beginning of the deposition.  Mr. Connor's deposition began on July 2, 2014, so the time for any supplemental production had not passed at the time Plaintiffs filed their motion.  In fact, the Chevron Defendants did timely produce to Plaintiffs additional materials required by Paragraph VII of CMO 112.

Honorable Shira A. Scheindlin
July 2, 2014
Page 4

CMO 112 prohibits unfettered expert discovery and streamlines the expert discovery process in order to prevent last minute discovery disputes like this one.  And consistent with CMO 112, Defendants did not seek, and Plaintiffs did not produce, the underlying data used in articles that Plaintiffs' experts authored and reference as support for their opinions and conclusions.  For example, Plaintiffs' expert Dr. Graham Fogg cites to numerous articles that he authored or coauthored as support for his opinions in this case.  Defendants properly did not request, and Plaintiffs did not produce, any of the underlying data for these articles as reliance materials.  But now that the depositions of Plaintiffs' experts are over, Plaintiffs want to re-trade that deal and apply a different set of rules to Mr. Connor in direct violation of CMO 112.  The Court should refuse to allow Plaintiffs to do so and should refuse to revisit the parties' prior agreements in CMO 112 at this late date.

**Plaintiffs' Request for the Data and Extensive Documents Violates CMO 112 and Should be Denied.**

There are three papers at issue in Plaintiffs' letter:

1. *Long Term Behavior of MTBE Plumes of Exceptional Length*, McDade, et al. (submitted for publication) ("McDade");
2. *Progress in Remediation of Groundwater at Petroleum Sites in California*, McHugh, et al. (2013) ("McHugh"); and
3. *Use of Long-Term Monitoring Data to Evaluate Benzene, MTBE and TBA Plume Behavior in Groundwater at Retail Gasoline Sites*, Kamath, et al. (2012) ("Kamath").

In addition, in the document requests that accompany Plaintiffs' deposition notice to Mr. Connor, Plaintiffs seek not only the underlying data, but an ever-expanding universe of documents, letters, and emails that are not permitted under Paragraph VII of CMO 112.

<u>The McDade Paper</u>

The Connor/Daus report does not even cite this *unpublished* paper, let alone rely upon it, as Plaintiffs concede.  *See* Pl. Ltr. at 6 (noting only Kamath and McHugh are discussed and cited in the report).  As such, Plaintiffs cannot and do not offer any justification for the production of the data underlying the McDade paper.  To be clear, neither Mr. Connor nor Mr. Daus will rely on the McDade paper in their depositions or at trial.  The Chevron Defendants have explained this time and again to Plaintiffs,[6] but Plaintiffs contend that they are entitled to this data simply because Mr. Connor coauthored this (unpublished) paper.  This is not the rule.  Plaintiffs' contention is unreasonable and violates the parties' agreement in CMO 112.

---

[6] *See, e.g.*, J. Maher letters to M. Axline dated May 19 & 30, 2014 (Exs. C & D).

Honorable Shira A. Scheindlin
July 2, 2014
Page 5

Additionally, most of the data has in fact been produced.  Table 3 of the Connor/Daus report lists nearly every site discussed in the McDade paper, and these site files were produced as part of the Connor/Daus reliance material.  It is this data, and these sites, upon which Mr. Connor will rely, and Plaintiffs have all that data.

The McHugh Paper

As stated above, Plaintiffs received all of the McHugh underlying data as part of a compromise to complete Mr. Connor's deposition on time.  This is clearly more than to which they are entitled, but the data alone is no longer good enough for Plaintiffs.  Instead, for the first time on June 20, Plaintiffs demanded various other documents, emails and additional materials concerning the data as well.[7]  Plaintiffs did not explain why this additional information is discoverable under CMO 112.  It clearly is not.  In fact, Plaintiffs have never explained how any of the data is discoverable under CMO 112.  Plaintiffs' latest ploy confirms that they clearly are not interested in the data, but rather are feigning a discovery dispute in order to advance their real goal: to strike Mr. Connor and his expert opinions despite the complete lack of any legitimate reason to do so.  In any event, the Court should limit Plaintiffs to the data that the Chevron Defendants provided, which is significantly more than they are entitled.   The Chevron Defendants and Mr. Connor should not have to search for and produce other documents, emails, and letters in response to a deposition notice that violates CMO 112.

 Furthermore, Plaintiffs' claim that Mr. Connor and Mr. Daus rely "heavily" on the McHugh paper is hyperbole, at best.  McHugh is cited *one time* in the Connor/Daus report and referenced in one accompanying table.  *See* Connor/Daus Report at pp. 16, 47 (Ex. G).  That is it.  Plaintiffs' failure to disclose this fact to the Court is telling about how tenuous Plaintiffs' motion really is.  There is no reason for the Connor/Daus report to rely "heavily" on McHugh because the scientific research on this issue in recent years overwhelming supports the McHugh conclusion that most MTBE plumes now are stable.  Furthermore, Mr. Connor has *never* seen the data, and he will testify to that fact.  While he assisted in writing the McHugh article, he did not personally perform the underlying analysis or analyze the data Plaintiffs demanded and now have.  Instead, as the *fourth* author on the paper, he simply provided high level guidance to the other authors.

Plaintiffs' suggestion that Mr. Daus relied "heavily" on McHugh is even more egregious.  Mr. Daus testified—as Plaintiffs well know—that he **did not** rely on McHugh but, rather, Mr. Connor cited the McHugh paper in Mr. Connor's section of the report:

Q.     Did you consider the published version of the [McHugh] paper in this case?
A.     *I didn't rely upon it*, but I did consider it.  I read the paper.
Q.     Isn't it a fact that the expert report you signed in this case cites and relies on that paper?

---

[7]     *See* D. Miller email to C. Correll dated June 20, 2014 (Ex. E) and C. Correll email to D. Miller dated June 24, 2014 (Ex. F).

Honorable Shira A. Scheindlin
July 2, 2014
Page 6

> A.      That would be John Connor's portion of the report that he prepared and in reading
> the report I read the material that John had prepared.

Daus Trans. at 10:20 – 11:03 (emphasis added) (Ex. H); *see also id.* at 97:01 – 18.

Mr. Connor and Mr. Daus did not rely on the McHugh data or the other related documents Plaintiffs seek. The Court should limit Plaintiffs to the data that the Chevron Defendants already provided, which is significantly more than to which they are entitled under CMO 112.

<u>The Kamath Paper</u>

Nor does CMO 112 require the Chevron Defendants or Mr. Connor to produce the data underlying the Kamath paper or any other related documents. While Mr. Connor cited the conclusions in Kamath, the mere fact that Mr. Connor cited a peer-reviewed and published article, like Kamath, as support for his opinions does not make the underlying data part of his reliance materials under CMO 112. The question is whether the underlying data was relied upon for the opinions in the expert's report. As repeatedly explained to Plaintiffs, Mr. Connor did not rely on the underlying Kamath data to prepare his report. Again, he provided high-level contributions to the paper, and Dr. Kamath actually reviewed and complied the data, not Mr. Connor. And, notably, Plaintiffs' expert, Dr. Fogg, cites Kamath, McDade, and McHugh in his rebuttal expert report and, in fact, claims that McDade and McHugh support his opinions in this case. Mr. Fogg, however, did not even produce the articles with his reliance materials.

Furthermore, the underlying Kamath data is highly confidential and subject to multiple confidentiality agreements. Mr. Connor was not the lead author of the Kamath article and simply has no authority to produce the data.[8]

**Plaintiffs' Deposition Notice Violates CMO 112.**

Plaintiffs' deposition notice to Mr. Connor is a blatant violation of Paragraph VII of CMO 112. It is not limited to the materials described above, as Plaintiffs agreed. Rather, as stated above, it represents everything that the parties sought to avoid when they negotiated and agreed to CMO 112—oppressive document requests that are far afield of Mr. Connor's work in this case and that are in direct violation of CMO 112.

The number and manner in which these requests violate CMO 112 is too lengthy to list. The following are just examples:

Mr. Connor's "file(s) which refer or relate to" MTBE, TBA and TAME (Requests 6-8);

---

[8]   This was also explained to counsel for Plaintiffs two years ago when these same attorneys requested this same data in the *Orange County Water District* case.

Honorable Shira A. Scheindlin
July 2, 2014
Page 7

All documents which identify the sites described in the article described as: Kamath, R., J.A. Connor, T.E. McHugh, A. Nemir, M.P. Le, A. J. Ryan 2011. Use of long-term monitoring data to evaluate benzene, MTBE and TBA plume behavior in groundwater at retail gasoline sites. Journal of Environmental Engineering. DOI: 10.1061/(ASCE) EE.l943-7870.0000488, and all documents which were considered and used in evaluating plume length and behavior in groundwater at sites which were mentioned, or referred to in that article (Request 24 (sic));

All documents received from, or sent to any member of the API Soil and Groundwater Technical Group which mentions, concerns, or refers to the study described in the following article: Progress in Remediation of Groundwater at Petroleum Sites in California by Thomas E. McHugh, Poonam R. Kulkarni, Charles J. Newell, John A. Connor, and Sanjay Garg (Request 25);

All documents received from, or sent to the American Petroleum Institute concerning the funding, or any other aspect of the study described in the article known as: Progress in Remediation of Groundwater at Petroleum Sites in California by Thomas E. McHugh, Poonam R. Kulkarni, Charles J. Newell, John A. Connor, and Sanjay Garg, including any proposal YOU sent to API concerning the study (Request 26);

All documents received from, or sent to Sanjay Garg and/or Shell Global Solutions (US), Inc. which mentions, concerns, or concerns the study or published article known as: Progress in Remediation of Groundwater at Petroleum Sites in California by Thomas E. McHugh, Poonam R. Kulkarni, Charles J. Newell, John A. Connor, and Sanjay Garg (Request 27);

A copy of any report(s) (including drafts) YOU submitted to the American Petroleum Institute and/or the API Soil and Groundwater Technical Group, or its members for review and/or comments concerning the study known as: Progress in Remediation of Groundwater at Petroleum Sites in California by Thomas E. McHugh, Poonam R. Kulkarni, Charles J. Newell, John A. Connor, and Sanjay Garg, including any documents which mention, concern, comment on, review and/or propose changes to that report(s) (Request 28);

A copy of any pre-publication version of the article known as Progress in Remediation of Groundwater at Petroleum Sites in California by Thomas E. McHugh, Poonam R. Kulkarni, Charles J. Newell, John A. Connor, and Sanjay Garg (Request 29);

Any and all documents and letters received from each and every editor and/or reviewer(s) of any pre-publication version of the article mentioned in Request No. 29, including all comments and/or suggested changes/modifications to the article (Request 30);

*See* Pls.' Sec. Am. Notice of Dep. to John Connor (Ex. I).

Honorable Shira A. Scheindlin
July 2, 2014
Page 8

Plaintiffs' deposition notice to Mr. Connor and, indeed, Plaintiffs' motion to compel the Chevron Defendants to produce these materials is a conscious disregard for their agreement, which was presented to and signed by the Court, to limit their document requests in accordance with Paragraph VII of CMO 112.   If sanctions are appropriate here, they are appropriately charged against Plaintiffs for this clear discovery abuse.

**Plaintiffs' Motion to Strike is Procedurally, Factually, and Legally Improper.**

Plaintiffs' purported motion to strike is both procedurally and factually flawed and cites no law to support the relief it seeks.   Procedurally, Plaintiffs are trying to bypass the Court's rules regarding the motion and pre-motion letter practice by asking the Court to strike Mr. Connor without first seeking leave to file a motion to strike.   There is no reason why the Court should grant such extraordinary relief outside of its normal procedures, and indeed, Plaintiffs did not even try to offer one.

The motion to strike is also devoid of any factual support.   Plaintiffs first make the bald claim that the opinions of Mr. Connor are duplicative of Mr. Daus.   They are not.   As Mr. Daus testified and Plaintiffs well know, there are several sections of the report authored solely by Mr. Connor:

- Section 3.0 - Technical Background Relevant to the Conditions at the Former Texaco 800 Service Stations;
- Section 3.1 - Typical Gasoline Fuel Groundwater Plume Behavior;
- Section 3.2 - Typical Gasoline Fuel Groundwater Plume Lengths and Characteristics;
- Section 3.3 - Gasoline Fuel Plume Stability Conditions; and
- Section 5.1 - Response to Expert Report of Dr. Graham Fogg.

Striking Mr. Connor would prevent the Chevron Defendants from submitting these opinions to the jury.   While Mr. Connor and Mr. Daus collaborated on the site-specific portions of the report, they each have different topics to cover.   It is premature, therefore, to make the determination that his testimony is duplicative of Mr. Daus's testimony.

Furthermore, the Court has traditionally left motions to strike experts to the trial court. That is what the Court did in *Crescenta Valley* and recently in *Merced RDA*.   The same should occur here, especially since Plaintiffs are seeking to strike Mr. Connor's opinions because they are allegedly duplicative of Mr. Daus's opinions.   The trial court will understand what issues are still at play at trial, and it may let Mr. Connor, Mr. Daus, or both testify depending on the status of the case, but it will certainly not allow duplicative expert testimony.   With the full record before it, the trial court will be in the best position to determine what testimony is and what testimony is not duplicative.

Nor are discovery sanctions appropriate here.   The Chevron Defendants have complied fully with their CMO 112 obligations, and Plaintiffs are not entitled to anything more. Furthermore, preclusion is a drastic remedy that "should be imposed only in rare situations."

Honorable Shira A. Scheindlin
July 2, 2014
Page 9

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156-57 (S.D.N.Y. 2012).  This drastic remedy is clearly not warranted here based on this record.

      For all of these reasons, the Chevron Defendants respectfully request that the Court deny all relief sought in Plaintiffs' June 24, 2014 letter.

Very truly yours,

Charles C. Correll, Jr.

cc: All counsel via LNFS