UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                             :

IN RE: METHYL TERTIARY BUTYL    :
ETHER ("MTBE") PRODUCTS        :     <u>OPINION AND ORDER</u>
LIABILITY LITIGATION             :
------------------------------------------------------ :     **Master File No. 1:00-1898**
                             :     **MDL 1358 (SAS)**
**This document relates to:**        :     **M21-88**
                             :
*Commonwealth of Puerto Rico, et al. v.*    :
*Shell Oil Co., et al.*, 07 Civ. 10470      :
                             :
------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.     INTRODUCTION**

           This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the Commonwealth of Puerto Rico ("the Commonwealth") alleges that

Defendants' use and handling of MTBE has contaminated, or threatened to

contaminate groundwater within its jurisdiction.  Familiarity with the underlying

facts is presumed for the purposes of this Order.

           The Puerto Rico legislature recently enacted Law No. 53-2014 ("Law

53"), which states that "prescription does not apply to . . . claims of the

Commonwealth of Puerto Rico relating to non-patrimonial public goods[.]"  The Commonwealth now moves under Federal Rule of Civil Procedure 54(b) to revise the Court's prior orders — which dismissed certain defendants on statute of limitations grounds — based on Law 53, which purports to apply retroactively.[1] Defendants object on the grounds that Law 53 (1) does not apply to the Commonwealth's claims; (2) contravenes the separation of powers doctrine set forth in the Puerto Rico Constitution; and (3) violates both the Puerto Rico Civil Code and Defendants' due process rights.[2]  For the following reasons, the Commonwealth's motion is DENIED.

## II.   BACKGROUND

On June 12, 2007, the Commonwealth filed its initial complaint against gasoline suppliers for supplying or trading in gasoline products containing MTBE.  On October 31, 2007, the case was transferred to this Court as part of the

---

[1]   On July 16, 2013, the Court granted motions to dismiss filed by Peerless Oil & Chemicals, Inc. ("Peerless"), Trammo Petroleum, Inc. and Trammo Caribbean, Inc. (collectively "Trammo") ("July 16 Order").  On December 30, 2013, the Court granted motions to dismiss filed by Idemitsu Apollo Corporation ("IAC"), Vitol, Inc. and Vitol, S.A. (collectively "Vitol") ("December 30 Order").

[2]   Trammo filed a separate opposition brief on the grounds that (1) Trammo Caribbean, Inc. dissolved six years before it was sued and (2) Trammo Petroleum, Inc. never transacted business in Puerto Rico.  *See* Trammo's Memorandum of Law in Opposition to the Commonwealth's Motion to Revise Prior Orders at 1.

MTBE MDL. Where an action is transferred under the MDL provision of 28 U.S.C. § 1407, "[the] transferee court applies the substantive state law . . . of the jurisdiction in which the action was filed."[3]

On December 3, 2012, the Commonwealth filed its Third Amended Complaint ("TAC") adding several defendants, including Peerless, Vitol, Trammo, and IAC.[4] On July 16, 2013, the Court held that the Commonwealth's claims against Peerless and Trammo were time-barred because they were filed after the one-year limitations period had run.[5] Similarly, on December 30, 2013, the Court dismissed the Commonwealth's claims against Vitol and IAC as time-barred.[6] The Court explicitly rejected the Commonwealth's argument that the doctrine of *nullum tempus occurit regit* ("*nullum tempus*") exempts the Commonwealth from

_____

[3]    *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993). *Accord In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 606 n.20 (S.D.N.Y. 2001) ("When considering questions of state law the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.").

[4]    *See* TAC ¶¶ 57, 66-70.

[5]    *See In MTBE*, 959 F. Supp. 2d 476, 499 (S.D.N.Y. 2013). *Accord In re MTBE*, No. 07 Civ. 10470, 2013 WL 4008632, at *3 (S.D.N.Y. Aug. 2, 2013) (denying reconsideration).

[6]    *See In re MTBE.*, No. 07 Civ. 10470, 2013 WL 6869410, at *6 (S.D.N.Y. Dec. 30, 2013).

"prescription" or limitations periods.[7]

On May 12, 2014, the Puerto Rico Legislature enacted Law 53.[8]  In its "Statement of Motives," Law 53 states that it is "the intention of this legislation to reaffirm and clarify that prescription does not apply in any manner to the Commonwealth of Puerto Rico whenever it acts in protection and defense of the public (non-patrimonial) goods of the People of Puerto Rico[.]"[9]  Law 53 defines "non-patrimonial goods" as those "beyond human commerce."[10]  Moreover, the law states that "[t]he norm concerning imprescriptibility over public non-patrimonial goods and rights" is recognized in Puerto Rico.[11]  In fact, "[a]t the beginning of the last century, the [Puerto Rico] Supreme Court conceptualized it as an aspect of . . . *nullum tempus ocurrit regit*, pursuant to which prescription does not run against the State."[12]  As such, Law 53 purports to amend Article 1830 and

---

[7]     *See id.* at *5-6.  In English, the phrase means "No time runs against the king." *Id.* at *5 n.76.

[8]     *See* Commonwealth's Memorandum of Law in Support of Motion to Revise Prior Orders ("Pl. Mem.") at 1.

[9]     Law 53 at 2.

[10]    *Id.*

[11]    *Id.* at 1.

[12]    *Id.*

4

1832 of the Puerto Rico Civil Code to "clarify" that the Commonwealth's "non-patrimonial public goods which the Commonwealth has and maintains in the name and for the benefit of [the people] are not subject to prescription."[13]  The law further states that it "shall apply retroactively [to every case] where there has not been a final, firm, and unappealable judgment."[14]

## III.    LEGAL STANDARD FOR REVISING A PRIOR ORDER UNDER RULE 54(B)

Rule 54(b) authorizes courts to revise "any order or other decision . . . that adjudicates fewer than all the claims . . . of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  The district court's discretion to revise a prior ruling is, however, limited by the law of the case doctrine and subject to "the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"[15]

"[G]enerally, there is a strong presumption against amendment of

---

[13]     *Id.* at 1, 3.

[14]     *Id.* at 3.

[15]     *Bergerson v. New York State Office of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

prior orders."[16]  In fact, a prior order "may not be changed unless there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"[17]  It is not enough that "defendants could now make a more persuasive argument[.]"[18]  "The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated[.]"[19]

## IV.   APPLICABLE LAW

### A.   Extinctive Prescription in Puerto Rico

In Puerto Rico, "there are two kinds of prescription . . . acquisitive prescription and extinctive or liberative prescription (limitation of actions)."[20]  Through acquisitive prescription, known as adverse possession, "one acquires title and all other real rights."[21]  By contrast, "[e]xtinctive or liberative prescription

---

[16]   *Id.*

[17]   *Id.* at 288-89 (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[18]   *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981) (citations omitted).

[19]   *Id.* (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).

[20]   *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550, 19 P.R. Offic. Trans. 592, 596-97 (1987).

[21]   *Id.* at 597.

(limitation of actions) extinguishes all rights and actions regardless of their class."[22]   "The two kinds of prescription have the following elements in common: the time factor, the concurrence of a certain period of time, and the certainty and firmness of legal life as their final purpose."[23]

In *Ayala v. Puerto Rico Land Authority*, the Supreme Court of Puerto Rico defined the boundaries of prescription.[24]  *Ayala* held that "[a]ll things that are subject to commerce among men are susceptible to prescription, it being understood that the State's 'patrimony' is subject to commerce among men."[25] The court also explained that the common law doctrine of *nullum tempus* — which exempts the government from prescription, or limitations periods — does not apply in Puerto Rico.[26]  Because Puerto Rico is a civil law jurisdiction, *nullum tempus* does not apply beyond the specific exception for "wastelands" set forth in

---

[22]    *Id.*

[23]    *Id.*

[24]    *See Ayala v. Puerto Rico Land Authority*, 116 D.P.R. 337, 16 P.R. Offic. Trans. 414 (1985).  Although *Ayala* involved an issue of acquisitive prescription, the Court addressed the limits of prescription in general.  *See id.* at 418.

[25]    *Id.* at 419.

[26]    *See id.* at 423.  *Accord Land Administration v. S.L.G. Rivera-Morales*, 187 D.P.R. 15, 40 (2012).

the Civil Code.[27]

## B.    Separation of Powers Under Puerto Rico Law

The doctrine of separation of powers under federal law is similar to

that under Puerto Rico law.[28]  While separation of powers is "not explicitly

incorporated into the Constitution of the United States," it is "expressly enshrined

in Art. I, Sec. 2 of the Constitution of the Commonwealth of Puerto Rico."[29]  The

Puerto Rico Constitution states that "[n]o law shall be held unconstitutional except

by a majority of the total number of Justices of which the [Supreme] Court is

composed in accordance with this Constitution or with law."[30]  The Supreme Court

of Puerto Rico has held that "the authority to interpret the Constitution and the

laws of the country rests exclusively on the Judicial Branch."[31]  As such, "the

---

[27]    *See Ayala*, 16 P.R. Offic. Trans. at 23-24.

[28]    *See Colon Cortes v. Pesquera*, 150 D.P.R. 724 (2000).  Defendants have supplied a stipulated certified translation of *Colon* that I cite as: "*Colon* at [page in certified translation]."  I will follow this format for other translations that have been submitted.

[29]    *Id.* at 8, 11 (citing P.R. Const. art. I § 2. ("The government of the Commonwealth . . . shall be republican in form and its legislative, judicial and executive branches as established by this Constitution shall be equally subordinate to the sovereignty of the people of Puerto Rico")).  Like Puerto Rico, "forty state constitutions contained express separation-of-powers requirements [as of 1998]."  G. Alan Tarr, *Understanding State Constitutions*, at 14 (1998).

[30]    P.R. Const. art. V § 4.

[31]    *Colon* at 11-12.

Legislature has no power to invade the province of the judiciary by setting aside, modifying, or impairing a final judgment of the court with jurisdiction."[32]

To determine whether a law violates the doctrine of separation of powers, the court must ask "whether the clear and specific intent of the statute was to affect the outcome of a specific litigation."[33]  The Supreme Court of Puerto Rico has noted that:

> We cannot be so naive as to ignore the true purpose and intent of a given action, and be blinded by what is conveniently presented to us in legal proceedings as the "legislative intent." This Court will not lend itself to such contradiction . . . [that] does not correspond to reality.[34]

Thus, courts must "examine with a high degree of skepticism any [law] that has the appearance of tailor-made legislation for the purpose of dictating the result in a particular case[.]"[35]  Where a law's true purpose is to "affect the outcome" of a case, it will be held unconstitutional.[36]

## V.    DISCUSSION

---

[32]    *Id.* at 12.

[33]    *Id.* at 17.

[34]    *Id.*

[35]    *Alvarado Pacheco et al. v. E.L.A.*, 188 D.P.R. 594, 603 (2013).

[36]    *Id.*

### A.    Law 53 Does Not Exempt the Commonwealth from Extinctive Prescription in this Case

Under Law 53, "non-patrimonial public goods which the Commonwealth has and maintains in the name and for the benefit of [the people] are not subject to prescription."[37]  The Commonwealth argues that Law 53 applies to its claims here because "in situ groundwater and surface waters are public domain goods and [] the Commonwealth regulates them for the benefit of the public."[38]  As a result, its claims cannot be time-barred.[39]

Defendants do not dispute that the Commonwealth's ground and surface waters are "public goods."[40]  Nor do they contest the Commonwealth's ability to regulate these waters.[41]  Instead, Defendants argue that even though these waters are public goods, they are *patrimonial* public goods.[42]  Therefore, they fall outside the reach of Law 53.

Law 53 defines "non-patrimonial" goods as those "beyond human

---

[37]    Law 53 at 1, 3.

[38]    Pl. Mem. at 8.

[39]    *See id.* at 10.

[40]    *See* Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Motion to Revise Prior Orders ("Def. Opp.") at 5.

[41]    *See id.*

[42]    *See id.*

commerce."[43]  As such, patrimonial goods are those *subject to* human commerce.[44]

The fact that the Commonwealth's ground and surface waters are subject to

commerce is nothing new.  In 1976, the Puerto Rico legislature enacted the Water

Law — which regulates "surface, subterranean, . . . and any other waters within the

jurisdiction of the Commonwealth" — to establish a "permit and franchise system

for the use [these waters] and . . . the fees to be charged in each case."[45]  The

Puerto Rico Aqueduct and Sewer Authority ("PRASA") — a government-owned

corporation responsible for water supply — earned $2.5 billion in net revenue in

2013 alone.[46]  PRASA sells water to the Commonwealth itself, pharmaceutical

companies, hospitals, hotels, and restaurants.[47]

      The Commonwealth, nevertheless, insists that *in situ* ground and

---

[43]     Law 53 at 2.

[44]     *See, e.g.*, *Sporhase v. Nebraska*, 458 U.S. 941, 949-50 (1982) ("Since ground water, once withdrawn, may be freely bought and sold . . . ground water is appropriately regarded as an article of commerce.").

[45]     12 L.P.R.A. §§ 1115b(a), 1115d(j).  These franchises and permits apply to water in situ because they affect the right to extract and sell water. *See id.* § 1115h(a); *Paoli Mendez v. Rodriguez*, 138 D.P.R. 449, 468 (1995) (discussing the water franchises, permits, and associated fees under the Water Law).

[46]     *See* Audited Financial Statements, PRASA, 2012-2013 https://www.acueductospr.com/INVESTORS/download/FinancialStatements/2013 PRASAAuditedFinancialStatementsFINAL2.pdf.

[47]     *See* 8/29/13 Online Report from CarribeanbusinessPR.com, Ex. 7 to the Declaration of Michael Dillon ("Dillon Decl."), counsel for Defendants, at 14.

surface waters are non-patrimonial "unless and until they are extracted and 'unaffected' and used for commercial purposes."[48] Because these waters are "in their natural state," the Commonwealth argues that they fall within the ambit of Law 53.[49] But this is a distinction without a difference. *First*, Law 53 states that prescription applies to goods "*susceptible* to appropriation."[50] As the United States Supreme Court has explained, because groundwater may be "freely bought and sold," it is "article of commerce."[51] *Second*, PRASA has generated billions of dollars in commerce selling drinking water — extracting this water from the same Class SG1 groundwater and Class SD surface waters described in the Commonwealth's complaint.[52] *Third*, the Commonwealth's strained argument is

---

[48]    Commonwealth's Reply to Defendants' Opposition to Motion to Revise Prior Orders ("Reply Mem.") at 2. The Commonwealth defines "unaffectation" as the process by which a public domain good "ceases to be used for [a] public purpose." Pl. Mem. at 7 (citing *San Geronimo v. Commonwealth*, 174 D.P.R. 518 (2008)).

[49]    Reply Mem. at 4.

[50]    Law 53 at 2.

[51]    *Sporhase*, 458 U.S. at 951. The Commonwealth contends that *Sporhase* applies only to *interstate* commerce. *See* Reply Mem. at 5. In fact, the Court held that groundwater is an "article of commerce" generally. *Sporhase*, 458 U.S. at 951 (recognizing that if a "surface owner [] withdraws Nebraska ground water," he or she could sell the water within the state).

[52]    *See* TAC ¶ 5 (defining Class SG1 groundwater and Class SD surface waters as "waters of the Commonwealth").

belied by its own complaint, which describes these waters as its "patrimony."[53] Because these waters are subject to commerce, Law 53 does not exempt them from prescription.

**B.    Law 53 Violates Separation of Powers Under Puerto Rico Law**

Defendants argue that even if Law 53 applies, it violates the separation of powers doctrine explicit in the Puerto Rico Constitution.[54] *First*, Defendants contend that the law purports to "'say[] what the law is' in language that directly and specifically contradicts what *this* Court has said[.]"[55] Under Puerto Rico law, "the authority to interpret the [Puerto Rico] Constitution and the laws of the country rests exclusively on the Judicial Branch."[56] Here, Law 53's "Statement of Motives" states that it intends "to *reaffirm* and *clarify* that prescription does not apply . . . to the Commonwealth of Puerto Rico whenever it

---

[53]    *See id.* ¶ 7. The Commonwealth contends that "patrimony" and "patrimonial" have different meanings because "'patrimony' is a noun, whereas 'patrimonial' is an adjective." Reply Mem. at 1-2. This dubious argument is unsupported by the cases the Commonwealth cites, which use the terms interchangeably. *Compare San Geronimo* at 25-26 (describing "potential patrimony over the reclaimed lands"), *with id.* at 38 (noting the "patrimonial susceptibility of unclaimed lands").

[54]    *See* Def. Mem. at 12.

[55]    *Id.* at 13 (quoting *Colon* at 12).

[56]    *Colon* at 11-12.

acts in protection and defense of the public (non-patrimonial) goods[.]"[57] The legislative history also confirms that the law "merely reiterates, for clarification purposes" that prescription does not apply to "nonpatrimonial assets."[58]

*Second*, Defendants argue that Law 53 was enacted to overturn this Court's July 16 and December 30 Orders — which held that the Commonwealth's claims against certain defendants were time-barred.[59] To determine whether a law violates separation of powers, a court must consider "whether the clear and specific intent of the statute was to affect the outcome of a specific litigation."[60] Here, Defendants have found no other case in Puerto Rico where the Commonwealth has

---

[57]    Law 53 at 2.

[58]    Comments of the Environmental Quality Board ("EQB"), Ex. 2 to the Dillon Decl., at 1. Moreover, rather than "reiterate" existing law in Puerto Rico, Law 53 contravenes it. Law 53 states that "imprescriptibility of the rights of the Commonwealth is a principle well-established in our law." Law 53 at 1. By contrast, in *Ayala*, the Puerto Rico Supreme Court explained that *nullum tempus* is not — and has never been — the law in Puerto Rico. *See Ayala*, 116 D.P.R. at 423. Although the Commonwealth concedes that *nullum tempus* and "imprescriptibility" are "related," it insists that imprescriptibility is different because it arises from the Puerto Rico Civil Code rather than common law. *See* Reply Mem. at 5-6. But the exemption is not "well-established." Before Law 53, no exemption from extinctive prescription existed in the Civil Code or elsewhere under Puerto Rico law.

[59]    *See* Def. Mem. at 12.

[60]    *Colon* at 17.

-14-

asserted an extinctive prescription defense.[61]  And the Commonwealth has failed to

identify a decision — other than the July 16 and December Orders — that would

trigger such a "clarification" from the Puerto Rico legislature.[62]  The bill was

proposed on March 14, 2014 and enacted less than two months later.[63]  During that

time, the Legislature solicited comments only from the EQB — a plaintiff in this

case — and the Department of Natural and Environmental Resources ("DNER").[64]

The Commonwealth, nevertheless, insists that "no separation of

powers concern [exists here because] the exercise of competing powers is by a

branch of the state government and a branch of the federal government."[65]  In

addition, the Commonwealth argues that Law 53 does not violate separation of

powers because "neither Order impacted by Law 53 is final and unappealable."[66]

The Commonwealth's contentions are meritless.  *First*, this Court applied Puerto

Rico law when it issued the July 16 and December 30 Orders, and must do so

---

[61]     *See* Def. Mem. at 3.

[62]     *See id.*  If, in fact, Law 53 is merely a "clarification," it is puzzling
why it must apply "retroactively" to pending cases.

[63]     *See* Senate Bill 996, Ex. 1 to the Dillon Decl.

[64]     *See* Comments of the EQB; Comments of the DNER, Ex. 3 to Dillon
Decl.

[65]     Pl. Mem. at 18.

[66]     Reply Mem. at 7.

-15-

here.[67]  When federal courts adjudicate questions of state constitutional law, they

must apply state separation of powers principles.[68]  Here, Puerto Rico is treated as

the functional equivalent of a state.[69]  Under the Puerto Rico Constitution, "the

authority to interpret the Constitution and the laws of the country rests exclusively

on the Judicial Branch."[70]  Allowing the Puerto Rico Legislature to "say what the

law is" would turn this Court "into an instrument of the Legislature's will."[71]

---

[67]    *See Menowitz*, 991 F.2d at 40 (2d Cir.1993); *In re MTBE*, 175 F. Supp. 2d at 606 n.20.

[68]    *See, e.g.*, *Maxwell's Pic-Pac, Inc. v. Dehner*, 739 F.3d 936, 942 (6th Cir. 2014) (holding that Kentucky statute did not violate separation of powers under Kentucky constitution)*; Dutchess/Putnam Rest. & Tavern Ass'n, Inc. v. Putnam Cnty. Dep't of Health*, 178 F. Supp. 2d 396, 400 (S.D.N.Y. 2001) (holding that county's regulations violated the "separation of powers doctrine, embodied in the New York State Constitution").

[69]    *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 608 n.15 (1982) (finding that Puerto Rico is "similarly situated" to a state for purposes of bringing a parens patriae action); *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002) ("For section 1983 purposes, Puerto Rico is deemed equivalent to a state."); *Playboy Enter., Inc. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 31 n.8 (1st Cir. 1990) (determining that Puerto Rico's laws are "State statutes" and that Puerto Rico is treated as a "State").

[70]    *Colon* at 11-12 (citing *Santa Aponte v. Ferre Aguayo*, 105 D.P.R. 670, 671 (1977)).

[71]    *Id.* at 15.  The Commonwealth also cites *In re Hernandez*, a Puerto Rico bankruptcy court case, for the proposition that based on federalism and comity concerns, federal courts should decline to rule on state separation of powers issues.  *See* Pl. Mem. at 19.  But there the court's reasoning was based on the fact that the bankruptcy court had "equitable powers to enforce the supremacy of federal law," but no power to adjudicate a state separation of powers issue.  *In re*

-16-

*Second*, separation of powers principles apply to court judgments in "pending litigation" as well as final and unappealable judgments.[72]  As such, the Puerto Rico Supreme Court has held that a law violated separation of powers because it was intended to reverse the decision of an intermediate appellate court.[73]  Thus, as an alternative holding, I find that Law 53 violates separations of powers doctrine explicit in the Puerto Rico Constitution.

## VI.    CONCLUSION

For the foregoing reasons, the Commonwealth's motion is DENIED. The Clerk of the Court is directed to close this motion (Doc. No. 429).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
             August 29, 2014

---

*Hernandez*, 487 B.R. 353, 362 (Bankr. D.P.R. 2013).  Nothing in *In re Hernandez* suggests that a federal district court in an MDL case can *never* rule on a state law separation of powers issue.

[72]      *Colon* at 16.

[73]      *See id.* at 12 (citing *Mision Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998)).

-17-

## - Appearances -

**Liaison Counsel for Plaintiffs:**       **Liaison Counsel for Defendants:**

Robin Greenwald, Esq.                     Peter John Sacripanti, Esq.
Robert Gordon, Esq.                       James A. Pardo, Esq.
Weitz & Luxenberg, P.C.                   McDermott Will & Emery LLP
180 Maiden Lane                           50 Rockefeller Plaza, 11th Floor
New York, NY 10038                        New York, NY 10020
(212) 558-5500                            (212) 547-5583

**Counsel for Commonwealth**:             **Counsel for Defendants:**

Michael Axline, Esq.                      Michael J. Dillon, Esq.
Miller, Axline, & Sawyer                  Peter John Sacripanti, Esq.
1050 Fulton Avenue, Suite 10              James A. Pardo, Esq.
Sacramento, CA 95825                      McDermott Will & Emery LLP
(916) 488-6688                            50 Rockefeller Plaza, 11th Floor
                                          New York, NY 10020
                                          (212) 547-5583